Daniel Feiner
1030 NW 14th, TH5
Portland, OR 97209
(503) 228-2822
dan@danfeiner.com

Attorney for Defendant

FILED'06 JUL 20 10:50USDC·ORE

FILED'06 SEP 08 16:01USDC·ORE

~~SEALED~~

REDACTED

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR _06 60069-1-AA_ |
| Plaintiff, | PETITION TO ENTER PLEA OF GUILTY, CERTIFICATE OF COUNSEL AND ORDER ENTERING PLEA |
| vs. | |
| Darren Todd Thurston, | |
| Defendant. | |

The defendant represents to the Court:

1.  My name is _Darren Todd Thurston_. I am _36_ years old. I have completed education through the _12th_ grade. ~~and some college~~. I request that all proceedings against me be in my true name.

2.  My attorney is _Daniel Feiner_.

**Page 1 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

5

3. My attorney and I have discussed my case fully. I have received a copy of the Indictment or Information. I have read the Indictment or Information, or it has been read to me, and I have discussed it with my attorney. My attorney has counseled and advised me concerning the nature of each charge, any lesser-included offense(s), and the possible defenses that I might have in this case. I have been advised and understand that the elements of the charge(s) alleged against me to which I am pleading "GUILTY" are as follows: Count __1__ : that the defendant (1) *willfully & knowingly* ; (2) *agreed with at least* ; (3) *to commit arson and/or* *one other person* *destroy an energy facility*

4. I know that if I plead "GUILTY," I will have to answer any questions that the judge asks me about the offense(s) to which I am pleading guilty. I also know that if I answer falsely, under oath, and in the presence of my attorney, my answers could be used against me in a prosecution for perjury or false statement.

5. I am not under the influence of alcohol or drugs. I am not suffering from any injury, illness or disability affecting my thinking or my ability to reason. I have not taken any drugs or medications within the past seven (7) days.

6. I understand that conviction of a crime can result in consequences in addition to imprisonment. Such consequences include deportation, or removal from the United States, or denial of naturalization, if I am not a United States citizen; loss of eligibility to receive federal benefits; loss of certain civil rights (which may be temporary or permanent depending on applicable state or federal law), such as the right to vote, to hold public office,

**Page 2 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

and to possess a firearm; and loss of the privilege to engage in certain occupations licensed by the state or federal government.

7.    I know that I may plead "NOT GUILTY" to any crime charged against me and that I may persist in that plea if it has already been made. I know that if I plead "NOT GUILTY" the Constitution guarantees me:

a.    The right to a speedy and public trial by jury, during which I will be presumed to be innocent unless and until I am proven guilty by the government beyond a reasonable doubt and by the unanimous vote of twelve jurors;

b.    The right to have the assistance of an attorney at all stages of the proceedings;

c.    The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;

d.    The right to see, hear, confront, and cross-examine all witnesses called to testify against me;

e.    The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilt may be drawn from this decision; and

f.    The right not to be compelled to incriminate myself.

8.    I know that if I plead "GUILTY" there will be no trial before either a judge or a jury and that I will not be able to appeal from the judge's denial of any pretrial motions I may have filed concerning matters or issues not related to the court's jurisdiction.

9.    In this case I am pleading "GUILTY" under Rules 11(c)(1)(A) **and/or** 11(c)(1)(B). My attorney has explained the effect of my plea under Rule 11(c)(1)(A) to be as follows:

> I plead guilty under Rule 11(c)(1)(A), pursuant to a Plea Agreement whereby the prosecutor has promised to dismiss other charges against me; therefore, at or before sentencing, the judge must either accept the Plea Agreement or allow me to withdraw my plea.

My attorney has explained the effect of my plea under Rule 11(c)(1)(B) to be as follows:

> I plead guilty under Rule 11(c)(1)(B); therefore, although the judge will consider the recommendations and agreements of both the prosecution and the defense attorneys concerning sentencing, the judge is not obligated to follow those recommendations or agreements.  If the judge imposes a sentence different from what I expected to receive under the terms of my plea agreement with the prosecutor, I do not have a right to withdraw my plea

10.    I know the maximum punishment which can be imposed upon me for the crimes to which I am pleading guilty is _____5_____ years imprisonment and a fine of $_250,000_. I also know that there is a mandatory minimum sentence of _N/A_ years.

**Page 4 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

11. I know that the judge, in addition to any other penalty, will order a special assessment as provided by law in the amount of $100.00.

12. I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the amount of the unpaid balance owed on the fine can be substantially increased by the judge and I can be imprisoned for up to one year.

13. My attorney has discussed with me the Federal Sentencing Guidelines. I know The Guidelines are advisory, not mandatory. I also know the sentencing judge, in determining the particular sentence to be imposed, must consider those factors set forth in Title 18, United States Code, Section 3553(a), including, but not limited to: the nature and circumstances of the offense, my own history and characteristics, the goals of sentencing (punishment, deterrence, protection, and rehabilitation), and the sentencing range established by the advisory Guidelines. If my attorney or any other person has calculated a guideline range for me, I know that this is only advisory, and is only one of the factors that the judge will consider in making a final decision as to what sentence will be imposed. I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph (10) above.

14. I know from discussion with my attorney that, under the Federal Sentencing Guidelines, if I am sentenced to prison I am not entitled to parole. I will have to serve the full sentence imposed except for any credit for good behavior that I earn. I can earn credit for good behavior in prison at a rate of up to 54 days for each year of imprisonment served.

**Page 5 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

Credit for good behavior does not apply to a sentence of one year or less.

15. I know that if I am sentenced to prison, the judge will impose a term of supervised release to follow the prison sentence. During my supervised release term I will be supervised by a probation officer according to terms and conditions set by the judge. In my case, a term of supervised release can be up to ___3___ years. If I violate the conditions of supervised release, I may be sent back to prison for up to *4/ months/years*.

16. I know that in addition to or in lieu of any other penalty, the judge can order restitution payments to any victim of any offense to which I plead guilty. I am also informed that, for certain crimes of violence and crimes involving fraud or deceit, it is mandatory that the judge impose restitution in the full amount of any financial loss or harm caused by an offense. If imposed, the victim can use the order of restitution to obtain a civil judgment lien. A restitution order can be enforced by the United States for up to twenty (20) years from the date of my release from imprisonment, or, if I am not imprisoned, twenty (20) years from the date of the entry of judgment. If I willfully refuse to pay restitution as ordered, a judge may resentence me to any sentence which could originally have been imposed.

17. On any fine or restitution in an amount of $2,500 or more, I know that I will be required to pay interest unless that fine or restitution is paid within fifteen (15) days from the date of the entry of judgment.

18. If I am on probation, parole, or supervised release in any other state or federal case, I know that by pleading guilty in this court my probation, parole or supervised release

**Page 6 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

may be revoked and I may be required to serve time in that case, which may be consecutive, that is, in addition to any sentence imposed on me in this court.

19. If I have another case pending in any state or federal court, I know that my Plea Petition in this case does not apply to my other case(s), and that I can be faced with consecutive sentences of imprisonment. However a pending case in the E.D. of California is resolved in my plea agreement and will be transfered to this district for disposition at the time of my sentence,

20. My plea of "GUILTY" is based on a Plea Agreement that I have made with the prosecutor. That Plea Agreement is attached hereto and incorporated herein. I have read or had read to me the Plea Agreement, and I understand the Plea Agreement.

21. No officer or agent of any branch of government (federal, state or local) or anyone else has promised or suggested that I will receive a lesser term of imprisonment, or probation, or any other form of leniency if I plead "GUILTY." I understand that I cannot rely on any promise or suggestion made to me by a government agent or officer which is not stated in writing, or which is not presented to the Judge in my presence in open court at the time of my entry of my plea of guilty.

22. My plea of "GUILTY" is not the result of force, threat, or intimidation.

23. I hereby request that the judge accept my plea of "GUILTY" to the following count:

24. I know that the judge must be satisfied that a crime occurred and that I committed that crime before my plea of "GUILTY" can be accepted. With respect to the charge(s) to which I am pleading guilty, I represent that I did the following acts and that the

**Page 7 - Petition to Enter Plea of Guilty, Certificate of Counsel, And Order Entering Plea**

following facts are true:

Count **1** :  I adopt the statement identified as Attachment **1** incorporated into my plea agreement as the factual basis for my plea of guilty.

25.  I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with a full understanding of the allegations set forth in the Indictment or Information, and with a full understanding of the statements set forth in this Petition and in the Certificate of my attorney that is attached to this Petition.

SIGNED by me in the presence of my attorney, after reading (or having had read to me) all of the foregoing pages and paragraphs of this Petition on this $20th$ day of $July$ , 2006.

_____
Defendant

CERTIFICATE OF COUNSEL

The undersigned, as attorney for defendant $Darren\ Todd\ Thurston$ hereby certifies:

1.      I have fully explained to the defendant the allegations contained in the Indictment or Information in this case, any lesser-included offense(s), and the possible defenses which may apply in this case.

2.      I have personally examined the attached Petition To Enter Plea of Guilty And Order Entering Plea, explained all its provisions to the defendant, and discussed fully with the defendant all matters described and referred to in the Petition.

3.      I have explained to the defendant the maximum penalty and other consequences of entering a plea of guilty described in paragraphs (6)-(20) of the Petition, and I have also explained to the defendant the applicable Federal Sentencing Guidelines.

4.      I recommend that the Court accept the defendant's plea of "GUILTY."

SIGNED by me in the presence of the above-named defendant, and after full discussion with the defendant of the contents of the Petition To Enter Plea of Guilty on the 20th day of July, 2006.

_____
Attorney for Defendant

## ORDER ENTERING PLEA

I find that the defendant's plea of GUILTY has been made freely and voluntarily and not out of ignorance, fear, inadvertence, or coercion. I further find the defendant has admitted facts that prove each of the necessary elements of the crime(s) to which the defendant has pled guilty.

IT IS THEREFORE ORDERED that the defendant's plea of GUILTY be accepted and entered as requested in this Petition and as recommended in the Certificate of defendant's attorney.

DATED this _20_ of _July_, 2006, in open court.

_____
U.S. District Court Judge



**U.S. Department of Justice**
*Karin J. Immergut*
*United States Attorney*
*District of Oregon*
*701 High Street*   *Office: (541) 465-6771*
*Eugene, OR 97401-2798*  *Fax: (541) 465-6582*

July 19, 2006

Mr. Daniel L. Feiner
Attorney at Law
1030 N.W. 12th Avenue, TH5
Portland, Oregon 97209

  Re: <u>United States v. Darren Todd Thurston</u>  Case No. CR 06-60069-1-AA
     Plea Agreement - **REDACTED VERSION**

Dear Counsel:

1. **Parties/Scope**:  This plea agreement is between this United States Attorney's Office for the District of Oregon (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority except as otherwise identified in this agreement.  This agreement does not apply to any charges other than those specifically mentioned herein.

2. **Charges and Penalties**:  Defendant agrees to plead guilty to Count 1 of the Information as follows:

  **Count 1: Conspiracy to Commit Arson and Conspiracy to Destroy an Energy Facility of the United States** in violation of Title 18, United States Code, Section 371. The maximum sentence is 5 years imprisonment, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

  Defendant agrees to pay the fee assessment applicable to each of the above counts by the time of entry of guilty plea or explain to the court why this cannot be done. Defendant will pay mandatory restitution as ordered by court.

3. **Eastern District of California**: The defendant agrees to the transfer of the charges pending against him in <u>United States v. Thurston et al.</u>, Case No. 2:06-CR-0155 DFL, from the Eastern District of California to the District of Oregon and to plead guilty to count one of the indictment in that case.  Count 1 charges the defendant as follows:

  **Count 1: Arson of a government building** in violation of Title 18, United States Code, Sections 844(f), (i) and 2.  The maximum sentence is 20 years imprisonment, a mandatory minimum of 5 years, a fine of $250,000, a 2 to 3 year period of supervised release and a mandatory $100 fee assessment.

  Defendant agrees to pay the fee assessment applicable to each of the above counts by the time of entry of guilty plea or explain to the court why this cannot be done.

4.  **Factual Basis**:  The factual basis for each count is attached hereto and by this reference incorporated herein as Attachment 1, which defendant agrees the USAO can prove beyond a reasonable doubt.

5.  **Dismissal/No Prosecution**:  The USAO will move to dismiss all remaining charges at the time of sentencing.  The USAO further agrees not to bring additional charges against defendant for offenses relating to arson, conspiracy, conspiracy to commit arson, or destruction of an energy facility in which defendant may have been involved directly or indirectly up to and including December 11, 2005, which took place in the District of Oregon.  The USAO will also move to dismiss at time of sentencing in this case, all pending charges in pending Case Number 05-497-KI which is also presently filed in the District Of Oregon.  The USAO for the Eastern District of California will dismiss all remaining charges at time of sentencing.

6.  **Resolution of Sentencing Issues**:  In addition to waiving the right to a jury trial on the issue of guilt, defendant knowingly and voluntarily agrees that sentencing issues in this case need not be alleged in a grand jury indictment, proven to a trial jury, or proven beyond a reasonable doubt.  Defendant also knowingly and voluntarily consents to judicial fact-finding and resolution of any and all sentencing issues.  Defendant and government agree that the guidelines calculations should be derived from the United States Sentencing Commission Guidelines Manual with effective date of November 1, 2000.  The defendant and government understand and agree that the court will consider 18 U.S.C. §3553(a) in determining the appropriate sentence in this case.

7.  **Guideline Enhancement**: The USAO will recommend the terrorism guideline enhancement found in U.S.S.G. §3A1.4 because the felony offenses either involved or were intended to promote a federal crime of terrorism.

8.  **Acceptance**:  The USAO agrees to recommend a 3 level reduction for acceptance of responsibility if defendant's offense level is 15 or greater; otherwise a 2 level reduction applies pursuant to U.S.S.G. §3E1.1.  The USAO reserves the right to change or omit this recommendation if defendant, between plea and sentencing, commits any new or additional violation of law, obstructs or attempts to obstruct justice or acts inconsistently with acceptance of responsibility.

9.  **Mitigating Role**: The USAO will recommend that defendant receive a 4 level decrease for his role as minimal participant in the offense under the provisions of U.S.S.G. §3B1.2(a).

10. **USAO Sentence Recommendation**:  The sentence to be recommended by the government in this case is based on the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to

protect the public from further crimes of the defendant; and to provide a just and fair sentence for this defendant in relation to and in comparison with all of the defendant's co-conspirators.

11. **Waiver of Appeal/Post-Conviction Relief:** Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds unless the sentence imposed exceeds the statutory maximum, the court imposes an upward departure pursuant to Part 5K of the Sentencing Guidelines, or the court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline range. Should defendant seek an appeal, despite this waiver of that right, the USAO may take any position on any issue on appeal. Defendant also waives the right to file a motion pursuant to 28 U.S.C. § 2255 to set aside the conviction and sentence, except on grounds of ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable guidelines or statute.

12. **Court Not Bound:** The court is not bound by the recommendations of the parties or of the Presentence Report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the court does not follow the agreements or recommendations herein.

13. **Full Disclosure/Reservation of Rights:** The USAO will fully inform the PSR writer and the court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition. The defendant is a citizen of Canada and a treaty exists between the United States and Canada concerning the transfer of prisoners. The USAO agrees to recommend defendant be allowed to be transferred pursuant to such treaty to serve his sentence should he apply for such transfer and so long as he otherwise qualifies.

14. **Breach of Plea Agreement:** If defendant breaches the terms of this agreement, or commits any new violations of law between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

15. **REDACTED**

16. **REDACTED**

17. **Abandonment of Firearms:** By signing this agreement, defendant hereby voluntarily abandons all right, title and interest to the firearms listed as follows: 1) Norinco rifle, model MAK 90, caliber 7.62x39, serial number 9445958, importer Compasseco Inc. Bardstown, KY; 2) Norinco rifle, model MAK 90, caliber 7.62x39, serial number

9376989, importer Interstate Arms Corp, Billerica, MA; 3) Ruger rifle, model Mini-14, caliber .223, serial number 184-38099; 4) Keltec pistol, model P40, caliber .40, serial number 55242; 5) Glock pistol, model 22, caliber .40, serial number CML333US, importer Glock Inc, Smyrna, GA; and 6) Glock pistol, model 19, caliber 9mm, serial number ADT277US, importer Glock Inc, Smyrna, GA.

18. **Total Agreement**: This letter states the full extent of the agreement between the parties. There are no other promises or agreements, express or implied. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

Sincerely,

KARIN J. IMMERGUT
United States Attorney

KIRK A. ENGDALL
Assistant U.S. Attorney

I have read this agreement carefully and reviewed every part of it with my attorney. I understand the agreement and voluntarily agree to it. I am satisfied with the legal assistance provided to me by my attorney.

_____
Date

_____
DARREN TODD THURSTON
Defendant

I represent defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Date

_____
DANIEL L. FEINER
Attorney for Defendant

ATTACHMENT 1

United States vs. Darren Todd Thurston

**Counts 1 and 2: Conspiracy to Commit Arson and Conspiracy to Destroy an Energy Facility of the United States:**

Beginning in October 1996 and continuing through December 2005, in the District of Oregon and elsewhere, Josephine Sunshine Overaker, Kevin Tubbs, Stanislas Gregory Meyerhoff, Daniel Gerard McGowan, Joseph Dibee, Rebecca Rubin, Chelsea Dawn Gerlach, Kendall Tankersley, Suzanne Savoie, Jonathan Christopher Mark Paul, Darren Todd Thurston, Nathan Fraser Block, Joyanna L. Zacher, Jacob Jeremiah Ferguson, Jennifer Lynn Kolar, William C. Rodgers and other persons, willfully and knowingly conspired and agreed to maliciously damage or destroy, or attempt to damage or destroy, by means of fire, buildings vehicles and other personal and real property owned in whole or in part or possessed by, or leased to, the United States or any department or agency thereof, and or used in interstate commerce or in any activity affecting interstate commerce; and to knowingly and willfully damage and attempt to damage the property of an energy facility of the United States involved in the transmission of electricity.

The conspiracies were accomplished by the defendant and the others named above, when certain of the defendants and others joined together in a group they called the "Family." This "Family" was what is commonly known as a "cell" of groups and movements publicly named and described by certain of the defendants and others as the Earth Liberation Front (ELF), the Animal Liberation Front (ALF), and other names.

The primary purposes of the conspiracies were to influence and affect the conduct of government, commerce, private business and others in the civilian population by means of force, violence, sabotage, mass destruction, intimidation and coercion, and by similar means to retaliate against the conduct of government, commerce and private business. To achieve these purposes, the conspirators committed and attempted to commit acts dangerous to human life and property that constituted violations of the criminal laws of the United States and of individual states.

Some of the defendants and others targeted for arson, buildings, vehicles and other real and personal property owned, possessed, and leased by the United States and its departments and agencies while others targeted for arson, buildings, vehicles and other real and personal property used in interstate commerce and in activities affecting interstate commerce; and still others targeted energy facilities of the United States for damage and destruction.

The defendant and others conducted and participated in meetings to plan arsons of the targeted sites. Several of these meetings were called "Book Club" meetings by the defendants and others and occurred at distant locations. The "Book Club" meetings covered subjects such as lock-picking, computer security, reconnaissance of targets,

and manufacture of timing devices to set off improvised incendiary devices.

Some of the defendants and others conducted research and surveillance of sites targeted for arson and discussed their actions among themselves by using code words, code names, and nicknames. The phrase "direct action" was used to include arsons and other acts of destruction.

In preparation for the actions, the conspirators designed and constructed destructive devices which functioned as incendiary bombs to ignite fires and destroy the targets for arson and provided transportation to the locations of the arson targets.

During the course of the "direct actions" the defendant and others dressed in dark clothing, wore masks and gloves and otherwise disguised their appearance. Some of the conspirators acted as "lookouts" to ensure secrecy as the crimes were carried out, and some placed destructive devices and accelerants at sites targeted for arson and ignited or attempted to ignite the devices and accelerants.

In some of the arsons and attempted arsons, certain of the defendants and others painted messages on the walls of the targets, including "Earth Liberation Front," "ELF" and related names and statements concerning the purposes of the crimes.

After the arsons and attempted arsons, the defendants and others destroyed, buried, hid and otherwise disposed of physical evidence used in the commission of the crimes and thereafter publicized and promoted the results of the fires by means of written press releases and communiques which attributed the arsons to the Earth Liberation Front (ELF), the Animal Liberation Front (ALF) and related groups, and stated the purpose of the arsons.

Before, during and after the arsons, attempted arsons, and destruction of an energy facility, some of the defendants and others agreed among themselves never to reveal to law enforcement authorities or to anyone else outside "the Family" the identity of the conspirators and participants in the arsons and attempted arsons and agreed among themselves to conceal or destroy any evidence connecting them to the arsons and attempted arsons. Some of the defendants and others possessed and/or used false identification documents in order to conceal their true identities and after the arsons and attempted arsons, some of the defendants and others fled and secreted themselves in foreign countries in order to avoid detection and arrest by law enforcement authorities in the United States.

**Eastern District of California Case Number 2:06-CR-0155 DFL– BLM Litchfield Arson**

During the month of October, 2001, Darren Todd Thurston was contacted by Joseph Dibee via the internet and asked to participate in an "action" somewhere in the United States. Thurston agreed and along with Rebecca Rubin, on or about October 15, 2001, traveled into the United States by eluding examination and inspection by

Immigration Officials. With the use of radio communication, Thurston and Rubin met up with Dibee and Jennifer Kolar on the U.S. side of the U.S. Canadian border. Dibee and Kolar transported Thurston and Rubin to Dibee's residence in Washington. While at the residence, Thurston, dibee, Kolar, Rubin and Stanislas Meyerhoff discussed plans to do a horse release and arson at the Litchfield Wild Horse and Burro Corrals located at Susanville, State and Eastern District of California. Thurston agreed to participate in the horse release portion of the action. Rubin and Thurston washed Dibee's truck to ensure there would be no trace evidence on the truck. Thurston and Dibee installed a roof rack on Dibee's truck so as to carry the necessary equipment for the action. Rubin and Thurston obtained back packs, water bladders, flashlights, tools and pepper spray to be used during the action. Thurston washed the back packs and water bladders with soap and water in a large sink in Dibee's basement to ensure there would be no trace evidence on the equipment. Thurston also wiped down all the tools with alcohol to make sure there would be no fingerprints so as to prevent detection by law enforcement. Thurston and Dibee met with Kolar and procured sets of "clean" maps of the Susanville, California area to be used during the action. The clean maps were devoid of fingerprints and DNA. Thurston observed Dibee and Meyerhoff mix the fuel which would be used to complete the arson. Thurston and others loaded the fuel to the top of Dibee's truck. Thurston then traveled with Dibee, Rubin, and Meyerhoff to a parking lot in Olympia, Washington where they met with several others who were also going to participate in the action. After picking up the people in Olympia, Washington, they traveled to Eugene, Oregon and picked up Kevin Tubbs. From Eugene, all traveled south to an area near Susanville, California. Thurston observed Meyerhoff remove Tupperware type containers from the top of Dibee's truck and was told by Meyerhoff they contained the timing devices to be used during the arson. Thurston and others gathered atop a large mound overlooking the Litchfield BLM facility. They tested night vision scopes which were going to be used during the horse release and arson. They then drove to a nearby area and once again cleaned all their equipment. They set up tents to camp for the night and to prepare for the action. The following day, they discussed their plan and that night, on or about October 15, 2001, Thurston and the others dressed in black clothing and wore cotton gloves and put socks over their shoes to avoid detection during the action. Thurston, Tubbs, Meyerhoff and Dibee all carried 5 watt two-way radios and utilized code words to communicate with one another and everyone had pseudonyms that were used during the action. All of this was to prevent detection by law enforcement during and after the action. Thurston, Rubin and the others left the camp area and traveled to the wild horse corrals. Thurston and Rubin cut the metal wire fencing surrounding the corrals and attempted to drive the horses out of the corrals. A pair of wire cutters was misplaced during the action and an unsuccessful search was attempted. Thurston heard over the radio that the incendiary devices had been set and all the conspirators met at a pre-designated pick up site. Thurston and Rubin were picked up by Tubbs and then traveled to where the incendiary devices had been placed and picked up Meyerhoff and Dibee. Thurston and the others then went to a location where they split up and left the Susanville area in three separate vehicles. On the trip back to Olympia, Washington, Thurston prepared a rough draft of the communique on his "Palm Pilot." Thurston and Dibee returned to the parking lot in Olympia, Washington and dropped of several of the co-conspirators. Thurston and

Rubin spent that night at Dibee's residence.  The following day, Thurston and Rubin washed Dibee's truck, the backpacks, water bladders and tools to remove any potential evidence.  The roof rack was removed from Dibee's truck and returned to the store for a refund.  Thurston and Rubin then returned to their residences in Vancouver, Canada. The incendiary devices functioned and the Litchfield, BLM Wild Horse and Burro Corrals were destroyed by fire. The buildings and other real and personal property were owned and possessed by the United States and the Bureau of Land Management of the Department of the Interior, located at the Wild Horse and Burro Facility, Susanville, California.  Thurston later prepared a final copy of the communique and sent it via internet to several non-profit groups wherein which the responsibility for the horse release and arson were claimed.