UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

THE HON. ANN L. AIKEN, JUDGE PRESIDING

UNITED STATES OF AMERICA,        )
                                 )
                Government,      )
                                 )
        v.                       )   No. 06-60069
                                 )       06-60120
DARREN TODD THURSTSON,           )
                                 )
                Defendant.       )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

EUGENE, OREGON

TUESDAY, MAY 29, 2007

PAGES 1 - 20

Kristi L. Anderson
Official Federal Reporter
United States Courthouse
405 East Eighth Avenue
Eugene, Oregon 97401
(541) 431-4112
Kristi_Anderson@ord.uscourts.gov

APPEARANCES OF COUNSEL:


FOR THE GOVERNMENT:    UNITED STATES ATTORNEY
                       BY:  JOHN RAY, ESQ.
                       john.ray@usdoj.gov
                       and  KIRK ENGDALL, ESQ.
                       kirk.engdall@usdoj.gov
                       405 East Eighth Avenue
                       Eugene, Oregon 97401
                       (541)465-6771


FOR THE GOVERNMENT:    UNITED STATES ATTORNEY
                       BY:  STEPHEN PEIFER, ESQ.
                       1000 SW Third Avenue, Suite 600
                       Portland, Oregon 97204-2902
                       (503)727-1044
                       steve.peifer@usdoj.gov

FOR THE DEFENDANT:     DANIEL FEINER, ESQ.
                       1030 NW 12th, Unit 5
                       Portland, Oregon 97209
                       (503)228-2822
                       dan@danfeiner.com

PROCEEDINGS

TUESDAY, MAY 29, 2007

THE COURT: You know, Mr. Thurston, I made my statement early on as a way to telegraph to your lawyer that, really, his words weren't going to change my analysis in terms of how this case has been resolved. And I would honor the analysis and honor the agreed upon resolution of this particular case.

And the reason that I said that has nothing to do with, you know, any ease of doing this sentencing. In many ways, this is a difficult sentencing because, clearly, in reading reports about you, you are extraordinarily gifted and bright. And you have squandered that in so many ways by not pursuing a different course of action and not understanding the impact as a leader you could have on so many people's lives. And you kept getting sidetracked, lured to do activities that really don't, in the bigger scheme of things, really lead to a conclusion that you have impacted the world in a way in which you really truly could have if you pursued your education. Because you come from a very loving and supportive family, and although there were difficult times, you had individuals who cared about you. You were very talented and gifted, and you did not pursue education to the extent that I think would have given you much more flexible thinking as opposed to the concrete

thinking that's demonstrated by these black-and-white actions.

And I think the letter -- it was the letter that struck me as well that the letter sort of talks about your intellectual development and understanding that the world is much more complicated and there are much more -- there's much more context in terms of how you have to operate and make decisions and work within a social body.

And then again, I have to indicate, you are a Canadian. You are here. Why are you here causing problems for our government? Don't you have some issues in Canada to resolve? Weren't you working up there? Why did you come here and just start problems?

Take care of your own place first. You have issues up there. Resolve your issues and be a lawful, law abiding individual, Canadian making a difference in how issues are shaped and formed. Don't be coming down here and causing problems in our neck of the woods.

In fact, why I think it's a sentence that I'm going to honor but I'm kind of surprised about is I can't tell you how many illegal reentry cases where people have come in here and committed, you know, drug offenses, and they are not only going to serve a longer period of time and then they are going to be deported to Mexico where their opportunities are way less significant than your

opportunities in Canada for success and an economy and a way to participate.

So I hope what you get out of this sentencing today and what you tell your mother and your grandmother is you get a chance to do over. And by doing over means doing right by people.

So because you probably didn't study American history, American constitutional law, civil rights and civil liberties, but you just decided your own code of the group of people you participate in, I want to read to you from a biography of an activist who understood what it meant to be an activist in the American system of governance, because democracy is a very complicated set of systems. But it was formed and organized with checks and balances on the three branches of government. And I note and read widely. You know, there's been a comment that your behaviors were very similar to the Boston Tea Party. And I thought, well, there you go. Ignorance. The cry in the Boston Tea Party was taxation without representation.

For all the activists involved in this activity, you all had a chance to participate in representative governance and coming in and fighting a good fight, whether it's at a city council level or there's just voting, you know, Congress, you know, legislative jobs, you know, working within an administration, getting a legal education,

understanding the principles that really did put this country together.

But nobody bothered to look at that complexity and that ability to effect change. It was instant gratification. And some day I hope people understand that instant gratification has caused so many difficulties for all of us. We don't have the ability to sustain any efforts longer than the moment to get what we need and want.

So to get what you need and want for you was to take action, make your own decisions, be, basically, you know, prosecutor, judge, and jury to make the conclusion fit your framework of what is right.

So this is just a quote from what I would tell you -- just a -- I think ironically, an appropriate title, *A Defiant Life: Thurgood Marshall and the Persistence of Racism in America*. Quoting on the 381st page in the chapter called "Always The Outsider, Always Defiant," I'm just going to read you one paragraph that sort of sums up this activist's view, Thurgood Marshall's view of activism.

"Law is a series of rules made, modified, discarded, and remade by legislators, judges, and others, Marshall insisted throughout his life as an advocate and as a jurist. If the law is too unfair or too exclusive or too insensitive and unrepresentative to the needs of some people

living in society, it can be challenged by them with the help of lawyers.

"'The rules is the rules' principle Marshall absorbed at Howard Law School, and it was confirmed by his practical legal experiences with Charles Houston in the 1930s. But Marshall, as the leader of a successful civil rights legal organization for three decades, understood that rules can be changed and that the tasks of lawyers is to use the law to change the bad ones. Hard work and patience were essential to success."

Now, while you were out releasing animals, Justice Marshall saw as his job to release human beings. He used the rule of law. He used the forms of government that were carefully crafted for a check and balance.

So when you come back to this country, should you ever be allowed back into this country, understand that change is through the rule of law, not the actions of a few people who think they hold the key to all knowledge. It's more complicated than that. And if you'd stayed in school long enough, you'd have understood the complexities and you'd have been challenged to a meaningful participation in helping the world see the views that you feel so strongly, because ironically, I will bet if you took a survey in this room, every single person here probably feels as strongly

about caring for humans and animals as you do.  But their approach is to raise and address those issues lawfully.

So do you understand?

THE DEFENDANT:  Yes.

THE COURT:  And I hold you today accountable for your criminal activity up to and including the last activities.

And I do, again, because the job I hold, I do believe people can change and make a difference and come back and pay back society.  And you have a lot to pay back. A great deal to contribute to either knowledge or to other human beings so that they respect the choices that you are to make.

And I -- I think it's truly tragic that anyone would hold you up as anything but a courageous person, because in your life, it's very difficult sometimes to find out who your friends are.  Right?  It's very difficult.  But it's never a bad thing.  In the end, the people who truly care about you, about you, will be there for you.  The others who tend to use people and who move on because you don't fit their narrow framework, can find other people.

So stand by the people who find you to be a worthy human being, and your letters demonstrated that you have any number of people who believe in you and see a brighter future, and understand that those that you left behind by

the decisions you are making -- your lawyer, I understood that meeting, and I -- people make their own decisions and people come to their own decisions through lots of different processes. And I don't hold it against anybody. Some people have a quicker frame of reference and can walk through that decision-making process one way, and others take in information, process it differently, and have to walk through their own set of decision makings to get there.

I do think the ability to have the communication and everybody understand that they were going to move on and they were going to let go of this, you know, terrible secret. Family secrets destroy families. This is just the same. It's a different context. But all your secrets were destroying you anyway.

So that meeting was pivotal in many ways to Ms. Gerlach's need to go forward. It may well have helped you, pushed you a little further down the way.

I also recognize, as your lawyer indicated, that it was a chance to say good-bye on a number of levels, on a number of levels. And I only hope that you support each other in your positive lifestyles down the road to the extent you can, because that's going to be important because people you thought were your friends, just as the folks when I do sentencings in a drug case, their buddies aren't here either. Okay?

So leave your world behind. You have lots of time to make up the difference and to contribute either by working with animals in an appropriate fashion, working with other education programs that you care about, getting a true education and understanding where you can make a difference and perhaps even understanding, by taking some American history and U.S. government, why the frames of reference today have all to do with battles long fought and honored and traditions that we uphold because, in the scheme of things, the three branches of government still is the best model to preserve and protect society as well as the individual. It may not be perfect, but it still is the best model.

So accordingly, I looked at the guidelines calculations to your offenses and make the following findings:

Case No. 6 -- 06-60069, Count 1, conspiracy.

Pursuant to 3D1.2, your conspiracy is grouped with the underlying substantive offense. Accordingly, the conspiracy count then is grouped with the offenses below.

Case No. 60-60120 [sic], Count 1, the BLM Litchfield wild horse facility.

The base offense level for this offense is 20. Based on the recommendation of the probation office, I also find a two-level downward adjustment for minimal role. I

decline to find that the defendant's role warrants a further two-level downward adjustment given the totality of your involvement.

Further, I find that the offense was calculated to influence, affect, or retaliate against government conduct, as evidenced by the communique issued afterwards describing the arson and horse release as efforts to stop the BLM's quote, illegal and immoral, unquote, practice of rounding up wild horses that eventually ended up in the slaughterhouse.

The question remains whether this court can consider this offense a violation of § 844(f)(1), a federal crime of terrorism, in light of the Patriot Act's 2001 amendment, requiring that arson of government property must include a substantial risk of harm or death before it may be considered as a federal crime of terrorism.

It is difficult to find that there was a substantial risk of harm because of the remoteness of the corral. Thus, the sole issue is whether the 2001 amendments apply to this offense, even though the offense was -- the offense conduct was completed prior to the amendments.

I have been unable, given the time constraints of last week, to conclusively resolve this issue after conducting a significant amount of research, particularly in the context of grouped offenses and the slight overlap between the effective date of the Patriot Act and the 2000

version of the guidelines.

Under the circumstances, I will err on the side of the defendant and decline to impose the enhancement based on the uncertainty of whether defendant's offense of conviction is identified by statute as, quote, a federal crime of terrorism.

Ultimately, however, it does not affect my sentencing decision. I have the discretion to depart where the guidelines do not adequately take into account aggravating circumstances of the offense conduct. Here, the communique issued after this offense stated that the arson was, quote, in opposition to the Bureau of Land Management's wild horse holding facility and the BLM's action of rounding up thousands of wild horses and burros to clear public lands for grazing cattle. The communique warned, "In the name of all that is wild, we will continue to target industries and organizations that seek to profit by destroying the earth."

Therefore, Subsection 3A1.4 does not adequately take into account defendant's intent to frighten, intimidate, and coerce government conduct and retaliate against government conduct. I exercise my discretion under 5K2.0 to depart upward by 12 levels, resulting in a base offense level of 30, which is the resulting offense level had the enhancement applied.

Acceptance of responsibility.

Based on the agreement of the parties, defendant will receive a three-level downward adjustment for acceptance of responsibility, resulting in an adjustment -- in an adjusted offense level of 27.

Criminal history category.

The defendant has 0 criminal history points, resulting in a criminal history category of I. However, under 3A1.4, defendant's criminal history category is established at VI.

The resulting guidelines range with an offense level of 27 and a criminal history score of VI is 130 to 162 months.

The government's motion for substantial assistance, then.

MR. PEIFER: Yes, Your Honor. We ask the court to depart downward 13 levels to level 14 with category VI. That would be 37 to 46 months, and we ask for a 37-month sentence.

THE COURT: Thank you.

MR. FEINER: Judge, I would wait until you were done, but I wonder if it wouldn't be more appropriate to bring this to your attention right now.

Unless I'm missing something, if the terrorism enhancement isn't imposed, his criminal history category would be I, not VI.

THE COURT: Oh, good point. What's the range then?

MR. PEIFER: 70 to --

MR. FEINER: It would be level 27, 70 to 87.

THE COURT: 70 to 87.

MR. PEIFER: So that would require just a six-level downward departure.

THE COURT: Is that right, Mr. Purdue? Would you double-check that?

MR. PURDUE: Level 21.

THE COURT: Your motion, then, Mr. Peifer, just so I have it clearly for the record, if his criminal history category now is a I, the guidelines range at 27 for the offense level, and I for the criminal history is 70 to 87 months.

Your motion.

MR. PEIFER: We would move for a downward departure of six levels to offense level 21, category I, which would be 37 to 46 months, again, asking for a 37-month sentence.

THE COURT: That motion will be allowed.

Downward departures.

Although, as in the previous cases, I have the discretion to increase the departure for substantial assistance or depart downward for other reasons or depart

upward for other reasons, I'm declining to do so in this case. The departure of the government more than adequately recognizes your cooperation, and in fact, I question -- I have my -- I have my own analysis about perhaps what this sentence might have been had you not been part of the overall plea agreement, given the unique nature of your criminal history, your own additional contacts, both here and in Canada, with the law, as well as what I believe to be your incredible intelligence and your ability to have understood the nature and consequences of these acts.

So all said and done, I think on balance, in order to underscore and support the resolution of these cases, I will follow the recommendation and hope that you are one of the individuals in this case that goes on to appreciate and live life knowing that you are given more opportunity to do things that will make a positive difference in the world than the incredible destruction that you caused.

Therefore, with regard to -- so I have taken a look at the advisory guidelines range. I have also considered the factors in 18 U.S.C. § 3553, which I have addressed those unique circumstances of your own. I have also looked at the obligations of sentencing, punishment, deterrence, rehabilitation, community safety, and noted that -- the importance of maintaining the plea agreement in this particular case.

All that being said, with regard to Case 06-60069, Count 1, you are committed to the Bureau of Prisons for confinement for a period of 37 months.

With regard to Case 06-60120, you are committed to the Bureau of Prisons for confinement for a period of 37 months, to be served concurrently with the sentence imposed in 6 -- 06-60069.

Next, you shall pay full restitution to the victim identified in the presentence report in the amount of $122,497.60, jointly and severally with Joseph Dibee, and your interest shall be waived. Dibee, Dibee. Is it Dibee or Dibee?

THE DEFENDANT: Dibee.

THE COURT: Dibee. Upon release from confinement, you will serve a three-year term of supervised release, subject to the standard conditions of supervision adopted by this court and upon the following special conditions:

First, you shall cooperate in the collection of DNA as directed by your probation officer, if required by law.

Next, you shall pay full restitution to the victim identified in the presentence report in the amount of $122,497.60, jointly and severally with Mr. Dibee in Case 06-60011.

If there is any unpaid balance at the time of your

release from custody, it should be paid at the maximum installment possible and not less than $200 a month. That amount will be negotiated when you are released and once you are employed, and the probation officer will have the ability to provide whether or not you are working in your full capacity to pay the restitution, because this obligation will continue for some time.

If deported, you shall not enter the United States without the approval of the Department of Homeland Security and without prior notification to the U.S. attorney and the U.S. probation office for the District of Oregon.

I'm not -- I'm also going to say -- it goes without saying, but you are not to commit any new federal law violations, whether they are state, federal, or local violations.

I'm not imposing a fine. I'm making the finding you don't have financial resources nor an appreciable earning ability to pay the fine, and you have a substantial restitution obligation which will be your first obligation.

However, you are required to pay the fee assessment in the amount of $200.

You entered into this plea agreement waiving all or part of your appeal rights. If you wish to file a notice of appeal, you may do so. It must be done within ten days of this date. If you can't afford to do so, contact the

clerk's office. It will be done for you and done for free.

Other recommendations, counsel.

MR. FEINER: Your Honor, we would ask for an initial designation to FDC SeaTac. However, we are concerned that this sentence might not be one that can be served there just because of its term.

So if that is not possible, then we would ask that the designation be to Sheridan, and it would have to be the prison there, not the camp, because as a resident of Canada, he would not be eligible for the camp.

THE COURT: We will include those recommendations in the order.

And did I miss anything, counsel?

MR. PEIFER: No, Your Honor.

THE COURT: Anything else to be dismissed?

MR. PEIFER: He's charged in the superseding indictment, so we'd ask that he be dismissed as far as that indictment is concerned.

(Counsel conferred.)

MR. PEIFER: The Portland case, he just mentioned, is before Judge King, and I can simply submit a dismissal order before him or we could do it here too as a part of the plea agreement.

THE COURT: We can just do it as part of the plea agreement.

MR. PEIFER: Thank you.

THE COURT: And then it's one set of paperwork --

MR. PEIFER: Right.

THE COURT: -- and nobody has to be responsible for it.

Anything else?

MR. FEINER: Nothing, Your Honor. Thank you.

THE COURT: Good luck.

THE CLERK: Court is in recess.

*(The proceedings were concluded this 29th day of May, 2007.)*

I hereby certify that the foregoing is a true and correct transcript of the oral proceedings had in the above-entitled matter, to the best of my skill and ability, dated this 6th day of July, 2007.

Kristi L. Anderson, Certified Realtime Reporter

